NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LATOYA P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.P., *Appellees.*

No. 1 CA-JV 21-0325
FILED 3-8-2022

Appeal from the Superior Court in Maricopa County
No. JD533410
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Latoya P. ("Mother") appeals the termination of her parental rights to K.P. ("the child").  She argues on appeal that (1) the Department of Child Safety ("DCS") failed to make diligent efforts to reunify her and K.P. before termination, and (2) that the superior court failed to properly determine whether termination was in the best interest of the child.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother is the biological mother[1] of the child, who was born in March 2020 substance exposed to marijuana.  Mother's marijuana card had expired, and she admitted to a history of using cocaine monthly as late as August 2019.  While Mother was offered in home services at that time, she declined to participate.

¶3        In May 2020, Mother brought K.P. to Banner Cardons Hospital, telling hospital staff that K.P.'s father had sexually abused the child. Mother could not articulate why she believed this or how K.P. had been assaulted.  According to hospital staff, she said she had been using methamphetamine over the prior two days.  Her behavior was so erratic and combative that hospital staff had to sedate her.  As no parent was available to care for K.P., hospital staff contacted DCS, which then took custody of the child.

¶4        DCS filed a dependency petition alleging Mother was unable to parent due to substance abuse, mental health and domestic violence. DCS offered Mother drug testing, assessments, and treatment, as well as parent and case aide services.

¶5        Mother did, at times, comply with her referral for drug testing through Physical Services, Inc. ("PSI").  In late May 2020, Mother tested

---

[1] Father's rights were terminated on abandonment grounds, but he did not appeal.

positive for methamphetamine and marijuana. She then tested consistently for a period of six weeks between October and November 2020. Each time, Mother tested positive for tetrahydrocannabinol ("THC"), the primary active ingredient in marijuana. But over the dependency, Mother frequently missed tests; out of the 80 tests that DCS required her to take between 2020 and 2021, she completed only 17.

¶6 DCS referred Mother to Terros Health for drug treatment. Mother completed an intake at Terros in June 2020, and was diagnosed with amphetamine use disorder and major depressive disorder. She did not participate in the recommended outpatient services, however, and was closed out unsuccessfully in September. After a second referral in October, she successfully closed out of outpatient services in December 2020, but she did not engage in an optional recovery maintenance program.

¶7 Mother self-referred for inpatient drug treatment at least three times. First, she entered Unhooked Recovery in September 2020. There, Mother reported using methamphetamine daily and consistently using cocaine and marijuana. Mother was diagnosed with amphetamine-type use disorder (severe) and cocaine use disorder (severe). She did not complete treatment at Unhooked Recovery, leaving after 17 days into her suggested 90-day treatment. Later, Mother enrolled in treatment at Phoenix Rescue Mission and Community Bridges, but closed out of each unsuccessfully.

¶8 DCS also provided Mother a parent aide and case aide. After missing several intake appointments, Mother completed an intake for a parent aide but closed out unsuccessfully after consistently arriving late, cancelling or failing to attend. As for the case aide and supervised visitation efforts, Mother brought no supplies to care for the child during her visits, and spent most of those visits on the phone.

¶9 Mother ceased contact with DCS in December 2020. Four months later, the court granted DCS's request to change the case plan from reunification to severance and adoption. Mother then resumed contact with DCS and asked to restart visits with the child. At a mediation in May 2021, Mother agreed to provide a hair follicle for testing that day and random urinalysis testing. Mother did not provide a hair follicle until the day of the severance hearing and never provided the new urine samples.

¶10 The court held a termination hearing in October 2021. The DCS case manager testified Mother persistently failed to engage in services, was not prepared for her visits, and had unsuccessfully closed out of her

parent aide services. She noted that Mother had ultimately failed to provide DCS any evidence of sobriety for any period longer than six weeks. Further, she testified that Mother had lied to both her probation officer and DCS about drug testing: she told DCS she was regularly testing through her probation (and vice versa) while testing with neither.

¶11        She noted DCS gave Mother several referrals for hair follicle testing after the mediation, but that she had failed to attend. Mother told DCS she missed that testing because of transportation difficulties, the absence of an open referral and because her hair was braided. But the DCS case manager testified she had scheduled cab and bus transportation for Mother and that PSI had open referrals—both for specific dates and for open-ended testing during the time in question. As for the hair issue, she testified Mother had months in which to remove her braids to test.

¶12        Finally, the case manager testified that the child was adoptable and currently fostered by an adoptive placement.

¶13        Mother testified that she had been sober since July 12, 2020 and disputed most of the case manager's testimony. She noted that she finally provided a hair follicle that morning.

¶14        Mother admitted that she had falsely told DCS she was testing through her probation. She admitted that she was aware of DCS's requirements to test from the May 2021 mediation forward. When confronted with her admissions to use of cocaine and methamphetamine after her claimed sobriety date, Mother claimed she made those ostensibly false statements because she was told she had to admit to substance abuse to receive services.

¶15        The superior court found that DCS had established grounds for termination based on Mother's prolonged substance abuse under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) and nine-months' time in out-of-home placement under A.R.S. § 8-533(B)(8)(a). The superior court found that severance would serve the child's best interest and that placing the child with a member of the extended family was impossible because Uncle had declined before to provide care and had not filed a grievance about the resulting disqualification.

¶16        We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1) and 12-2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

**DISCUSSION**

I.     Standard of Review and Substantive Law

**¶17**     To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interest. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶18**     Mother challenges the court's findings that (1) DCS made diligent efforts to reunify the family, and (2) severance and adoption was in the child's best interest.

II.     The superior court did not abuse its discretion in finding that DCS had made reasonable and diligent efforts toward reunification.

**¶19**     Mother argues that because she did not complete her hair follicle test after the May 2021 mediation—complaining that no referral was entered—that DCS failed to make diligent efforts to reunify her and the child.  The superior court held "Mother was given a full and fair opportunity to address [DCS's] concerns" but "Mother has refused to test for the Department and has been unable to demonstrate any significant period of sobriety [and] has admitted to lying about her usage."

**¶20**     "Parents enjoy a fundamental liberty interest in 'the care, custody, and management' of their children." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 8 (2021) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  Thus, before a court terminates parental rights, DCS is constitutionally required to render reasonable and diligent reunification services even in "the absence of a statutory duty . . . ." *Jessie D.*, 251 Ariz. at 581, ¶ 18 (2021) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 32 (App. 1999)).

**¶21**     The superior court found that DCS had offered Mother drug testing, substance abuse assessment and treatment and transportation to participate in those services.  The DCS case manager testified that she had checked whether there was a referral open with PSI when Mother

complained to her in summer 2021, and confirmed in DCS's system that a referral was open. The court found that DCS had offered transportation and that the referral for hair follicle testing had been made, implicitly finding the case manager's testimony more credible than Mother's. More pointedly, the court found that the evidence at trial "suggested that Mother made misrepresentations to the Adult Probation Department and [DCS] regarding testing," concerning whether she needed to test by her probation or by DCS – depending on who was asking.

¶22        We do not reweigh the evidence, "even when 'sharply disputed' facts exist," and we decline Mother's invitation to do so. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (quoting *Pima Cnty. Severance Action No. S-1607*, 147 Ariz. 237, 239 (1985)). The court found that the cumulative efforts of DCS were reasonable and diligent. Because reasonable evidence supports these findings, we do not disturb them.

    III.    The superior court did not abuse its discretion in finding that termination was in the child's best interest.

¶23        The duty of courts to evaluate post-severance placement arises *after* the court has considered and severed the parent-child bond, at which point the biological parent no longer has standing to raise the issue. *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009) (citing *Sands v. Sands*, 157 Ariz. 322, 324 (App. 1988); A.R.S. §§ 8-533(B), 8-538(B)-(C)). Mother nonetheless argues that the superior court failed to properly determine whether termination was in the child's best interest because it did not make express findings justifying placement with a non-relative. When children are removed from the care of a biological parent, the governing statute requires that DCS consider foster care with kin before resorting to placement with other foster care. A.R.S. § 8-514(B)(1)-(3). But as Mother concedes in part, the court does not "'weigh alternative placement possibilities to determine' if severance is in the child's best interests, although it may consider 'the immediate availability of an adoptive placement' or 'whether an existing placement is meeting the needs of the child.'" *Antonio M.*, 222 Ariz. at 371, ¶ 2 (quoting *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998)).

¶24        The superior court found, and the record reveals, the child's Uncle had been considered as a potential placement earlier in the case, but was unwilling or unable to foster the child at the time. Uncle did subsequently contact DCS within a month of the termination hearing, but because he had been sent a denial letter, he would have had to engage in the "grievance process" with DCS before being considered.

**¶25** Neither Mother nor Uncle pursued the DCS grievance process after Uncle was sent a denial letter. Mother's challenge to the child's placement comes after severance; therefore, Mother no longer possesses standing to challenge the child's placement in non-kin foster care rather than with Uncle. The commentary in *Antonio M.* that assumes *arguendo* that a biological parent has standing to challenge post-severance placement is *obiter dicta* and unpersuasive. *See Antonio M.*, 222 Ariz. at 370-71, ¶¶ 2-3. We find no error.

## CONCLUSION

**¶26** For the reasons stated above, we affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA